The Law Offices of Avrum J. Rosen, PLLC
Counsel to Richard L. Stern, Trustee
38 New Street
Huntington, New York 11743
631 423 8527
Fred S. Kantrow
Scott T. Dillon

UNITED STATES BANKRUPTCY COURT       RETURN DATE: **3/11/15**
EASTERN DISTRICT OF NEW YORK       TIME: **9:30 a.m.**

-----------------------------------------------------------x

In re:                        Chapter 7

MCO WASH, INC., d/b/a MIDDLE COUNTRY     Case No.: 14-73345-reg
AUTO SPA, d/b/a FLOSSBOY DETAIL, d/b/a
CENTEREACH HAND WASH,

                    Debtor.

-----------------------------------------------------------x

### TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER UNDER SECTIONS 363(a), 363(b), 363(f) and 363(m) OF THE BANKRUPTCY CODE AND RULES 2002, 6004 AND 9004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (1) AUTHORIZING TRUSTEE TO SELL TO THE HIGHEST AND BEST BIDDER AT AN AUCTION SALE DEBTOR'S COMMERICAL LEASE FOR PREMISES, MACHINERY AND EQUIPMENT; (2) SCHEDULING A HEARING TO APPROVE SUCH SALE TO THE HIGHEST AND BEST BIDDER; (3) APPROVING CERTAIN BIDDING PROCEDURES; AND (4) APPROVING THE <u>MANNER AND EXTENT OF NOTICE OF SUCH AUCTION HEARING</u>

To:    HONORABLE ROBERT E. GROSSMAN
       UNITED STATES BANKRUPTCY JUDGE

Richard L. Stern, Chapter 7 trustee ("Trustee") for the estate of MCO Wash, Inc. ("Estate"),

d/b/a Middle Country Auto Spa, d/b/a Flossboy Detail, d/b/a Centereach Hand Wash, debtor

("Debtor"), by and through his attorneys, The Law Offices of Avrum J. Rosen, PLLC, by this

application ("Application") hereby seeks an Order of this Court under Sections 363(a), 363(b),

363(f) and 363(m) of Title 11, United States Code ("Bankruptcy Code"), and Rules 2002, 6004

and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"): (i) authorizing

Trustee's sale of: (a) Debtor's interests in a commercial lease for the premises; and (b) all

machinery and equipment related to Debtor's pre-petition operations as a car wash, as further described below ("Collateral") at public auction, free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests to attach to the proceeds of the sale for good and valuable consideration, substantially in accordance with the terms and conditions set forth herein to the bidder with the highest and best offer to be considered and approved by the Court at said hearing; (ii) scheduling a hearing to approve of the sale of the lease and Collateral to the successful bidder; (iii) approving terms and conditions for submitting offers and bidding procedures; (iv) approving the form and manner of notice with respect to the auction hearing ("Sale Hearing"); and (v) granting such other and further relief as this Court deems just and proper under the circumstances, and respectfully states as follows:.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

## VENUE

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATUTORY AUTHORITY

3.      The statutory predicates for the relief sought in this Motion are Sections 363(a), 363(b), 363(f) and 363(m) of the Bankruptcy Code, and Rules 2002, 6004 and 9004 of the Bankruptcy Rules.

## BACKGROUND

4.      This case was commenced by the filing of a voluntary petition under to Chapter 11 of the Bankruptcy Code on July 22, 2014 ("Petition Date").   By Order dated January 7, 2015, Debtor's case was converted from one under Chapter 11 of the Bankruptcy Code to one under

Chapter 7 of the Bankruptcy Code. Richard L. Stern was appointed the interim Trustee and thereafter did duly qualify.

5.    Prior to the Petition Date, Debtor purchased from Flossboy Detail, Inc. ("Flossboy") a car wash and detail business, its machinery and equipment located at 2495 Middle Country Road, Centereach, New York 11720 ("Premises").

6.    Specifically, on or about June 27, 2012, Debtor and Flossboy entered into an asset purchase agreement ("Asset Purchase Agreement") where by Debtor purchased from Flossboy the "[car wash business], including all of the machinery, equipment, furniture, fixtures, inventory and leasehold improvements located on said Premises" as well as the "logo and trade name of said Business, to-wit, 'Middle Country Auto Spa', and all rights under any service contracts and contracts for vending machines or other rental or use of equipment" and the "Business telephone and facsimile numbers", for a purchase price of ONE MILLION DOLLARS ($1,000,000.00). Debtor is obligated to make monthly payments to Flossboy under the Asset Purchase Agreement and related note in the amount of FIVE THOUSAND NINE HUNDRED SEVEN DOLLARS ($5,907.00). Trustee believes Debtor is in post-petition default of its monthly obligation under the note held by Flossboy.

7.    In conjunction with the Asset Purchase Agreement, on or about May 24, 2013, Flossboy filed with the Office of the Suffolk County Clerk a UCC-1 Financing Statement, reflecting a security interest in "All machinery equipment fixtures leaseholds improvements inventory accounts receivable and general intangibles existing at [Premises] or hereinafter acquired including all additions accessions or substitutions thereto and all increases modifications alterations or replacements thereof and the proceeds from the sale thereof." Thus, Trustee believes that Flossboy has a first priority blanket security interest in all of Debtor's assets; on October 29,

3

2014, Flossboy filed with the Court Proof of Claim No. 10-1, which asserted a secured claim in the approximate amount of NINE HUNDRED THIRTY FIVE THOUSAND TWO HUNDRED DOLLARS ($935,200.00).

8.    Furthermore, Debtor is the tenant and lessee under a lease and series of assignments and subleases ("Lease") for the Premises.  Specifically, on or about September 29, 2000, The Klean Machine, Co. ("Klean Machine") entered into a lease with All-Star Car Wash of Centereach Realty, Inc. for the use and occupancy of the Premises for a term commencing on September 29, 2000, through and including December 31, 2030.  Thereafter a series of assignments and subleases conveyed the tenancy rights under the Lease to various third parties.  Ultimately, concomitant to the Asset Purchase Agreement, on or about June 27, 2012, Debtor and Klean Machine entered into an Assignment of Assumption of Lease ("Assignment"), whereby Debtor obtained its present tenancy and leesse rights under the Lease.

9.    Debtor, under the Assignment and Lease, is responsible to pay its monthly rent obligation to Klean Machine.  Upon information and belief, the present base monthly rent payment to Klean Machine for the Premises is currently FIVE THOUSAND SEVEN HUNDRED THREE DOLLARS ($5,703.00), running through June 30, 2015.  Additionally, Debtor is responsible under the Assignment and Lease to pay all real estate taxes and assessments levied against the Premises from the date of the Assignment to end of the term of the Lease.  Upon information and belief, Debtor is in arrears on its post-petition rent obligation to Klean Machine from September 2014 to date, which totals approximately THIRTY FOUR THOUSAND TWO HUNDRED TWENTY DOLLARS ($34,220.00), not including any legal fees and expenses that Klean Machine may have incurred in this bankruptcy case.  Furthermore, Trustee believes that Klean Machine paid the real estate taxes for the Premises in December 2014, in order to protect its ownership rights.

10.     Finally, on or about May, 2014, Debtor, upon information and belief, entered into an agreement with Fast Business Funding ("Fast Business") whereby Debtor sold or pledged its future receivables from credit and debit card purchases.  Upon information and belief, Debtor owes Fast Business approximately SEVEN THOUSAND DOLLARS ($7,000.00).  Trustee notes however, that Fast Business has not filed a proof of claim, nor has Trustee been able to verify that Fast Business filed a UCC-1 Financing Statement.  Trustee takes no position as to the security rights under the priority scheme of Flossboy and/or Fast Business over Debtor's Collateral.

11.     Trustee and his counsel undertook a due diligence investigation as to Debtor's ownership of the Collateral and its rights as tenant and lessee under the Lease and Assignment. Trustee ultimately concluded that Debtor's ownership of the Collateral and tenancy under the Lease may have value for the estate.  Accordingly, by motion filed on January 20, 2015, Trustee sought entry of an order approving the retention of David R. Maltz & Co., Inc., ("Maltz") as auctioneer, to assist Trustee in liquidating the Debtor's Collateral and Lease for the benefit of the creditors of this estate.  To that end, Maltz has already conducted a physical inspection of the Debtor's Collateral which remains at the Debtor's location, as well as the Premises.  This Court approved Trustee's retention of Maltz by Order entered on January 21, 2015 [ECF Doc. No. 75]. Since the date of its retention, Maltz has been actively marketing the Lease and Collateral for auction sale and such information is available on Maltz's website.[1]

## BASIS FOR RELIEF

12.     Section 363(b) of the Bankruptcy Code provides that a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate

---

[1] http://www.maltzauctions.com/auction_detail.php?id=249177.

. . ."  A trustee must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business.  *See, e.g., Licensing By Paolo, Inc., v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *In re Lionel Corp.,* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Global Crossing Ltd.,* 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.,* 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

13.    Here, sound business reasons exist to justify selling the Collateral and rights under the Lease at an Auction Sale.   Indeed, allowing Trustee to proceed with the proposed Auction Sale shall maximize return to the creditors of this estate by selling the Debtor's assets which have value.

14.    Specifically, under Bankruptcy Code Section 363(f), a trustee may sell property of the estate free and clear of any interest in such property of an entity other than the estate only if, at least one of the following conditions is satisfied:

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate vale of all liens on such property;
> (4)    such interest is in *bona fide* dispute; or
> (5)    such entity may be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*11 U.S.C. § 363(f).*

15.    Since Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements shall suffice to approve the sale of the Collateral and Lease free and clear of liens, claims, encumbrances and interests.  *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147, n.24 (6th Cir. 1991) (recognizing that Bankruptcy Code section 363(f) is written in the disjunctive, and holding

that the court may approve a sale "free and clear" provided that at least one subsection of section 363(f) is met.) *See, also, In re Elliot,* 94 B.R. 343, 345 (Ed. Pa. 1988).

16.     As discussed above, Trustee conducted an inquiry as to whether there are any validly perfected security interests encumbering the Collateral, and determined that Flossboy has established a security interest in the Collateral.  Trustee and his counsel have undertaken numerous discussions with counsel for Flossboy and believes that he has reached an accord to the extent that Flossboy has consented to Trustee's intended sale of the Collateral and Lease.[2]

17.     Trustee continues to speak with and negotiate with counsel for Klean Machine with respect to curing present arrears existing on the base rent and real estate taxes, in order to facilitate a future assignment of the Lease to the third party successful bidder under the sale contemplated by this Application.

18.     The starting bid for the sale of the Collateral and Lease at auction shall be determined by the Trustee in consultation with his retained professionals and will be in an amount determined to be sufficient to cover the amounts due that have been negotiated pursuant to stipulation with the parties.

19.     Trustee respectfully submits that the intended auction sale of the Collateral and Lease is in accordance with the provisions of Section 363 of the Bankruptcy Code.

20.     By virtue of the foregoing, it is respectfully requested that this Court authorize the Trustee to sell the Collateral and Lease free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests to attach to the proceeds of sale

---

[2] Trustee has made numerous demands upon Fast Business, which Debtor originally indicated that it might hold a security interest in the Collateral.  To date, Trustee has not been provided with any documents which would allow him to conclude that Fast Finance is in fact a secured creditor as to the Collateral.

pursuant to Section 363(b), (f) and (m) of the Bankruptcy Code.   The subject Collateral and Lease shall be sold "as is" with all faults.  The Trustee makes no representations whatsoever as to the status or condition of any of the Collateral or the Premises.

## REQUESTED RELIEF

21.    Trustee seeks an Order of this Court, substantially in the form of the proposed Order annexed hereto:

      (a)    Approving the terms, conditions and procedures for Trustee's sale of  the Estate's interest in the Collateral and Lease to the bidder making the highest and best offer;

      (b)    Approving the bidding procedures set forth more fully below;

      (c)    Approving the manner and extent of notice of the auction sale, if any;

      (d)    Allowing Trustee to sell the Estate's interest in the Collateral and Lease free and clear of all liens, claims, encumbrances and interests with such liens, claims, encumbrances and interests, if any to attach to the proceeds; and

      (e)    Granting such other relief and further relief as is just and proper under the circumstances.

## BIDDING PROCEDURES

22.    Trustee proposes and seeks Court approval of the following bidding procedures for any third party wishing to submit a bid for the Estate's interest in the Collateral and Lease at an auction sale to be conducted by Maltz, Trustee's Court appointed auctioneer:

(A)    The following constitutes the terms and conditions of sale of the Collateral and Lease.

(B)    The auction sale ("Sale") will take place on Wednesday, March 18, 2015 at 11:00 a.m. at the auction gallery of Trustee's auctioneer, David R. Maltz & Co., Inc. ("Auctioneer"), 39 Windsor Place, Central Islip, New York 11722, (516) 349-7022, www.MaltzAuctions.com, or at such later date and time as shall be chosen in the sole discretion of the Trustee.

(C)    Information regarding Trustee's sale of the Collateral and Lease can be obtained by contacting the Auctioneer at the address, telephone number and website set forth in ¶ B, above.

(D)    Prior to the commencement of the Sale, any and all prospective bidders must deliver a certified or bank check payable to the order of Richard L. Stern, Trustee, in an amount at least equal to FIFTY THOUSAND DOLLARS ($50,000.00).    Said certified or bank check(s) shall be held as a good faith deposit, which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid ("Successful Bidder").    At the conclusion of the Sale, should any party who has posted a deposit not be deemed the successful bidder, or runner-up bidder, then said certified or bank check(s) shall be returned to that bidder immediately after the conclusion of the Sale.

9

(E)     Trustee shall retain and deposit in escrow the qualifying deposit of the second highest bidder ("Second Bidder") of the Sale.  At the conclusion of the closing of the contemplated contract and sale of the Collateral and Lease to Successful Bidder, Trustee shall return to Second Bidder its qualified deposit within five (5) business days.

(F)     Should Flossboy choose to participate at the Sale to purchase the Estate's interest in the Collateral and Lease, Flossboy shall not be required to tender to Trustee a qualifying deposit in light of its secured claim and right to credit bid at the Sale.  In the event, however, that Flossboy is either the Successful Bidder or Second Bidder and fails to close a scheduled contract and sale with Trustee in accordance with the Bidding Procedure, then the Proof of Claim of Flossboy [Claim No. 10-1] shall be reduced in the amount of FIFTY  THOUSAND  DOLLARS  ($50,000.00)  as  liquidated damages.

(G)     Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder shall deliver to Trustee by certified check or bank check an amount equal to TWENTY FIVE (25%) percent of the successful bid, minus the qualifying deposit (together with the qualifying deposit, the "Deposit").  The Successful Bidder must execute, and thereby agree to be bound by: (a) these Terms and Conditions of Sale; and (b) a Memorandum of Sale.

10

(H)    Successful Bidder must close title ("Closing") to the Collateral and Lease at a date ("Closing Date") that is the later of either three (3) weeks after the conclusion of the Sale, or one (1) week after entry of an Order of this Court approving the Sale. **TIME BEING OF THE ESSENCE as to the purchaser**, although such date may be extended solely by Trustee. The Closing shall take place at location that is to be determined by Trustee.

(I)    In the event that Successful Bidder has posted a deposit by certified or bank check but has failed to close on the transaction within one (1) week after entry of an order approving such sale, unless the Trustee shall extend said time in writing, said amount shall be forfeited and shall constitute liquidated damages for Successful Bidder's failure to close.

(J)    All subsequent bids to the initial bid shall be in increments to be determined solely by Trustee, in consultation with Auctioneer and/or his retained professionals, as to bids for the Collateral and Lease.

(K)    In connection with the Closing and Closing Date, the Successful Bidder is hereby given notice that **<u>Time is of the Essence against the Successful Bidder and the failure of the Successful Bidder to close for any reason whatsoever (except as otherwise provided below) including his, her or its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee</u>**

**retaining the qualifying deposit as liquidating damages and the termination of the Successful Bidder's right to acquire the Collateral and Lease under these Terms and Conditions of Sale.** The Successful Bidder shall be obligated to close title to the Collateral and Lease and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid **his, her or its** obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver the Collateral and Lease. Further, the Successful Bidder must demonstrate, to the satisfaction of the Trustee or the Court, as the case may be, evidence of **his, her or its** ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. Trustee reserves the right to reject any offeror, who Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Collateral and Lease. **Expenses incurred by the Successful Bidder, or any competing bidder concerning the performance of any due diligence, such as obtaining reports or environmental inspections, shall be the sole responsibility of such bidder and under no circumstances shall Trustee, or the estate, or the Trustee's professionals, be liable or responsible for, or pay, such expenses**.

(L)    If Successful Bidder fails to deliver to Trustee by certified check or bank check an amount equal to TWENTY FIVE (25%) percent of

the successful bid, minus the qualifying deposit, to equal the Deposit within forty eight (48) hours following the Sale ("Successful Bidder's Default"), Trustee, in his sole and absolute discretion, may, within three (3) business days of Successful Bidder's Default, deem the Second Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and memorandum of sale, as the new Successful Purchaser ("New Successful Purchaser"). New Successful Purchaser shall not receive credit for any Deposit forfeited by the initial Successful Purchaser. New Successful Purchaser must close the purchase of the Collateral and Lease at the later of a date: (i) no more than forty five (45) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default; or (ii) no more than forty five (45) days after entry of an Order of this Court approving the Sale (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser**, although such date may be extended solely by Trustee in his discretion.

(M)    In the event that the Successful Bidder for the Collateral and Lease fail to tender payment of the balance of the purchase price by the time of closing, Trustee in his sole discretion shall be authorized to sell the Collateral and Lease to Second Bidder without any further notice or approval of the Bankruptcy Court.

(N)     Should Second Bidder fail to close on the Collateral and Lease, Trustee shall be authorized to sell the Collateral and Lease to the next highest bidder without any further notice or approval of the Bankruptcy Court and Trustee shall retain any down payment of the Second Bidder as liquidated damages.

(O)     It is understood that the Collateral and Lease of this estate are being sold and delivered **"AS IS" "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof;  (e) environmental conditions; and (f) subject to all deed restrictions.  By delivering their respective qualifying deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Collateral and Lease, the state of title thereof and laws, rules and regulations applicable thereto, and the form of Trustee's asset purchase agreement that Trustee will execute to

14

convey the Collateral and Lease, and will rely solely thereon and on their own independent investigations and inspections of the Collateral and Lease in making their bids.  All bidders acknowledge that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Trustee, Maltz, or Trustee's retained professionals.

(P)     Trustee, Maltz, and Trustee's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Premises, Collateral and Lease, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Premises, Collateral and Lease or this Sale, that might be pertinent to the purchase of the Collateral and Lease, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Premises; (b) the potential qualification of the Premises, Collateral and Lease for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Premises, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the

15

Premises to obtain a change in the zoning or use, or a variance in respect to the Premises; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Premises, Collateral and Lease from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Premises, Collateral and Lease; (f) the present and future condition and operating state of any and all machinery or equipment in the Premises and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Premises; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Premises; or (j) the compliance or non-compliance of the Premises, Collateral and Lease with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Premises. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. Trustee and his retained professionals are not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information

16

pertaining to the Premises, Collateral and Lease, made or furnished by Trustee or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by Trustee.

(Q)   Trustee shall convey the Collateral and Lease in accordance with a contract(s) provided by Trustee to the prospective purchaser and any successful bidder must agree to enter into a contract of sale similar to the contract of sale provided by Trustee at the auction sale.

(R)   David R. Maltz & Co., Inc. has been retained by an Order of the Bankruptcy Court and shall be entitled to be paid those commissions as provided for by the Local Rules for the Eastern District of New York, upon notice and proper motion to the Bankruptcy Court. Neither Trustee, Maltz, Trustee's retained professionals, nor the Estate of Debtor are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Court, including expressly Tanya Meiler d/b/a Sell Buy Me.

(S)   All Collateral shall be delivered at its present location at the Premises.  Should any Collateral not be presently located at the Premises, Successful Bidder shall be solely responsible for the costs associated with any removal of equipment to the Premises from its current location.  Trustee and his retained professionals shall not be

17

responsible for delivery of any Collateral from its current location to the Premises.[3]

(T)     Nothing contained in these terms and conditions of sale/bidding procedures are intended to supersede or alter any provisions of the United States Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court.  Trustee reserves the right to modify the terms and conditions of the sale at the Sale and thereafter, consistent with the provisions of the Bankruptcy Code and the Orders of this Court.

(U)     These terms and conditions of sale/bidding procedures shall be read into the record or specifically incorporated by reference at the auction Sale of the Collateral and Lease.  By making a bid for the Collateral and Lease, all bidders shall be deemed to have acknowledged that they have read these terms and conditions of sale/bidding procedures and agree to be bound by them.

(V)     Trustee shall be a party to the Sale of the Collateral and Lease exclusively in his capacity as a trustee in bankruptcy and not as an individual.  If Trustee is unable to deliver title to the Collateral and Lease in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the qualifying deposit to the Successful Bidder (or Second Bidder) and

---

[3] Trustee, Maltz, and his retained professionals have no independent information that there exists any Collateral not located at the Premises.

18

upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim in law and/or equity against Trustee, Maltz or Trustee's retained professionals.

(W)     Trustee reserves his right to withdraw the Collateral and Lease from the auction or from sale, either prior, or subsequent to the auction, for any reason whatsoever, as he deems necessary or appropriate.

(X)     The Sale of the Collateral and Lease is subject to confirmation by this Court.  Trustee or Trustee's attorney shall notify the Successful Bidder whether the Sale is confirmed by an Order of this Court.  Any disputes concerning the Sale shall be determined by this Court.  By participating in the auction and sale, all bidders consent to the jurisdiction of this Court to determine such disputes arising in the Debtor's pending case.

### SUMMARY OF THE PROPOSED CONTRACT OF SALE

23.     Successful Bidder shall enter into a contract of sale of the Collateral with Trustee and a summary of the terms of the contract of sale are set forth below.

24.      Seller is Richard L. Stern, Chapter 7 Trustee herein.

25.     Proposed Purchaser is the bidder with the highest and best offer at the Sale.

26.     Property Description is the Collateral and Lease as described herein.

27.     Conveyance is in "all as presently exists" in "as is" "where is" condition "with all faults."  Trustee makes no representations or warranties of any sort.

28     Purchase Price is proposed at the highest and best offer made at the auction Sale.

29.      Auctioneer - David R. Maltz & Co., Inc.

19

30.    <u>Adjustments</u> - None.

31.    <u>Delivery of Possession</u> - on the date of Closing.

32.    <u>Conditions of Closing</u> - This sale is expressly subject to Bankruptcy Court approval and is subject to higher and better offers thereupon.

33.    <u>Closing</u> at The Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743, no later than one (1) week after the issuance of an Order of this Court approving the Sale.

34.    <u>Applicable Law</u> is the law of the State of New York.

35.    <u>Risk of Loss</u> is the seller's until the date of Closing.

36.    Trustee believes that the overall terms of a proposed Contract of Sale shall be favorable to the Estate, not harmful to Trustee, and shall be negotiated at arm's length with the proposed purchaser.

37.    To maximize the amount of potential offers and obtain the greatest benefit to the Estate, Trustee proposes that notice of the Sale Hearing be served on all creditors, parties in interest and those entities filing a notice of appearance in the case, as well as Tanya Meiler d/b/a Sell Buy Me, who was retained by the debtor-in-possession in its Chapter 11 to market and sell the Collateral and Lease. In addition, Trustee proposes that the notice of the Auction Sale be published on the Auctioneer's website and be marketed by the Auctioneer in the usual and customary manner.

38.    Trustee maintains that the above procedures constitute appropriate bidding procedures under the facts and circumstances of this case. In order to maximize the benefit to the Estate, Trustee seeks to implement this competitive bidding process given the nature of the proposed transaction. Trustee believes that this procedure is designed to generate a maximum

20

recovery to the Estate, while serving to prevent frivolous bidding, and respectfully requests that this Court approve and authorize same.

39.    Trustee requests that the Court allow his to sell the Estate's interest in the Collateral and Lease free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests attaching to the proceeds of sale in the order, priority and validity that they may exist.

### THE PROPOSED SALE IS IN THE BEST
### INTERESTS OF THE CREDITORS OF THE ESTATE

40.    As set forth in detail above, Trustee believes that this proposed sale of the Estate's interest in the Collateral and Lease is in the best interest of the creditors of Debtor's Estate.

41.    Trustee believes that as the notice of the Sale Hearing and this Application are (will) being sent to all of the parties who have thus far expressed an interest in this bankruptcy proceeding by filing a Notice of Appearance, and to all of the creditors of the estate, the Trustee believes that this will help ensure a fair and equitable bidding process to benefit the creditors of the estate.  A Notice of Sale will also appear on the Auctioneer's website.

### NOTICE

42.    This Application has been filed with the Clerk of the Court and: (i) notice of the Application; and (ii) Application shall be provided to Debtor, Office of the United States Trustee, all parties who have filed notices of appearance in Debtor's case, all creditors, parties who have filed proofs of claims, and parties in interest, at least twenty four (24) days in advance of the hearing scheduled hereon.

## NO PRIOR REQUEST

43.    No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order, substantially in the form submitted herein: (i) authorizing the Trustee to sell the Collateral and Lease, free and clear of all liens, claims, encumbrances and other interests with liens to attach to proceeds, and for other good and valuable consideration substantially in accordance with the terms and conditions; (ii) scheduling a hearing to approve of the sale of the Collateral and Lease to the Successful Bidder; (iii) approving the terms and conditions for submitting higher or better offers, including any overbid procedures; (iv) approving the form and manner of notice with respect to the auction hearing; and (v) granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: Huntington, New York
      February 4, 2015

                    The Law Offices of Avrum J. Rosen, PLLC
                    Attorneys for Trustee

          BY:    /s/ Scott T. Dillon
                    Fred Kantrow
                    Scott T. Dillon
                    38 New Street
                    Huntington, New York 11743
                    631 423 8527
                    Scottdillonesq@gmail.com