UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                           Case No. 8-14-73345-reg

MCO Wash, Inc.,

                      Debtor.                    Chapter 7
------------------------------------------------------------------x

## <u>MEMORANDUM DECISION</u>

Before the Court are the Chapter 7 Trustee's proposed distribution of funds and final applications for compensation in the matter of MCO Wash, Inc. (the "Debtor"). The Chapter 7 Trustee for the Debtor is Richard L. Stern (the "Trustee"). The Court previously entered orders retaining the Law Offices of Avrum J. Rosen, PLLC ("Rosen"), and the accounting firm of Citrin Cooperman & Company, LLP (the "Accountant") as the Trustee's professionals ("Retained Professionals"). The Trustee is asking the Court to approve a final distribution of estate funds generated in part through a carve-out agreement between the Trustee and a secured creditor. Based on the terms of the carve-out agreement, the Trustee proposes a distribution to general unsecured creditors while offering no distribution to senior classes of creditors. One senior class of creditors objects to the proposed distribution because it bypasses them in contravention of the priority scheme set forth in 11 U.S.C. § 726. The Office of the United States Trustee (the "UST") objects on the same grounds. The Court agrees, and finds that where a chapter 7 trustee generates funds resulting from a carve-out from a secured creditor, the final distribution of these funds to creditors must be consistent with the priorities of distribution as set forth in the Bankruptcy Code. Absent the consent of a senior class of creditors, the distribution of estate funds may not deviate from the statutory requirements. Therefore, the Trustee's final report shall not be approved. However, the Court does find that the Trustee and the Retained Professionals are entitled to the fees and expenses

as requested.  In this case, the fees and expenses sought by the Trustee and the Retained Professionals are reasonable and comport with § 330(a) of the Bankruptcy Code.  The actions of the Trustee and the Retained Professionals provided a benefit to the Debtor's estate and its creditors, and the services were rendered in a competent and professional manner.

This Court has opined on numerous occasions that Chapter 7 trustees and their retained professionals should be fairly compensated when their efforts can reasonably be expected to benefit the estate. The Court has also opined that the benefit to an estate can be measured by the fact that there are estate funds available for distribution to creditors other than solely the Chapter 7 trustee administrative claims.[1]  This does not mean that the trustee must guarantee that such funds will ultimately be available for distribution, only that there was a reasonable expectation that this would occur. To the extent funds are available, then the distribution of those funds must comport with the statutory requirements.

## FACTS

Pre-petition and throughout the pendency of the chapter 11 case, the Debtor operated a car wash.  On July 22, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On October 15, 2014, an Order authorizing the Debtor to retain a broker to market a sale of the Debtor's business was docketed.  On September 17, 2014 the Debtor indicated on the record that the Debtor and the retained broker believed that the business could realize a sale price in excess of $900,000.  On January 4, 2015, the Court converted the case to a case under chapter 7 of the Bankruptcy Code.  On January 7, 2015, the Trustee was appointed as the chapter 7 trustee.  On January 8, 2015, the Trustee filed an application to employ Rosen as counsel to the

---

[1] This case is factually distinguishable from *In re All Island Truck Leasing Corp.*, 546 B.R. 522 (Bankr. E.D.N.Y. 2016).

Trustee.  On January 20, 2015, the Trustee filed an application to retain an auctioneer (the "Auctioneer").  On January 21, 2015, orders authorizing the retention of Rosen and the Auctioneer were docketed.

On February 4, 2015, the Trustee filed a motion to authorize the Sale pursuant to 11 U.S.C. § 363.  On March 12, 2015, an order authorizing the Sale and approving bid procedures was docketed.  On March 18, 2015, the Sale was conducted with a price realized of $390,906 (the "Sale Proceeds").  On March 25, 2015, the Trustee filed the Stipulation, which was agreed to by the Trustee, the Debtor's landlord, Klean Machine Co. (the "Landlord"), and a secured creditor, Flossboy Detail, Inc. (the "Secured Creditor").  The Stipulation was not noticed on any other parties.  The Stipulation is divided into two sections: "stipulation" and "agreed and so ordered." The Stipulation provides that, from the Sale Proceeds, the Landlord was to be paid $132,243.33 to cure the Debtor's defaults under the lease and that the Secured Creditor was to be paid $176,238.67.  The "stipulation" section of the Stipulation further provides that an $82,425 carve-out from the Sale Proceeds (the "Carve-out") "shall be used to pay the allowed administrative expenses of the chapter 7 estate and the allowed general unsecured claims in the case…." However, the "agreed and so ordered" section of the Stipulation does not direct how the Carve-out is to be distributed.  It merely provides that the Carve-out shall be transferred to the Debtor's estate.  On March 27, 2015, the Stipulation was docketed as a Stipulation and Order signed by the Court (the "Stipulation and Order").

On August 5, 2015, the Debtor's chapter 11 counsel and accountant (the "Chapter 11 Administrative Creditors") filed applications for compensation.  On September 18, 2016, orders approving the fees of the Chapter 11 Administrative Creditors for an outstanding balance of $47,924.95 (the "Chapter 11 Administrative Claims") were docketed.  On August 11, 2015, the

Trustee filed an application to retain the Accountant.  On August 17, 2015, an order authorizing the retention of the accountant was docketed.  On January 1, 2016, the UST docketed the Trustee's Final Report (the "Final Report"), and the applications for compensation for the Trustee, Rosen, and the Accountant (the "Applications for Compensation").  The Trustee, Rosen, and the Accountant (the "Chapter 7 Administrative Creditors") are seeking commissions, fees and expenses totaling $51,537.06 (the "Chapter 7 Administrative Claims").  The Final Report provided for the following payments: 100% of the Chapter 7 Administrative Claims; $10,087.29 to the UST on account of pre-conversion quarterly fees; $526 to the Clerk of the Court on account of charges; and, $10,313.69 to the Chapter 11 Administrative Creditors on account of the Chapter 11 Administrative Claims.  The Final Report provided for no distribution to priority unsecured or general unsecured claims.  On the same day, the UST docketed a statement of no objection.

On May 25, 2016, the Trustee filed an amended Trustee's Final Report (the "Amended Final Report"), which contained two separate tables of proposed distribution: one distributing the Carve-out and another distributing the $10,704.05 of other estate assets (the "Other Estate Assets").  The Trustee proposed to distribute the Other Estate Assets, pro rata, to the Chapter 7 Administrative Creditors, the UST, and the Clerk of the Court.  The Trustee further proposed to distribute $51,446.30 of the Carve-out to the Chapter 7 Administrative Creditors, the UST, and the Clerk of the Court, and $10,313.69 to the General Unsecured Creditors.[2]  The Amended Final Report proposed zero distribution to the Chapter 11 Administrative Creditors and to the priority unsecured creditors.

---

[2] The balance of the Carve-out had already been paid, by order of this Court, to the Auctioneer retained by the Trustee.

On July 1, 2016, the Trustee filed a Memorandum of Law in Support of the Amended Final Report.  The Trustee argued that the distribution proposed in the Amended Final Report was proper and consistent with the Stipulation and Order.  The Trustee further argued that the First Circuit case *In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993) ("*SPM*") establishes that a carve-out from an undersecured creditor is not subject to the priorities of §§ 726 and 507 and that, therefore, a chapter 7 trustee may distribute funds pursuant to a carve-out outside the usual waterfall.  Finally, the Trustee distinguished carve-outs in a chapter 7 from those in a chapter 11, in which the absolute priority rule of § 1129(b)(2)(B) serves as an absolute bar to distributions in contravention of the waterfall.  *See Dish Network Corp. v. DBSD North America, Inc.*, 634 F.3d 79 (2d Cir. 2011) (*"Dish Network"*).  On the same day, the Debtor's chapter 11 counsel filed a letter objecting to the proposed distribution in the Amended Final Report and requesting that the "Court not deviate from the priority scheme set forth in § 507 and approve the [Final Report]."  On July 6, 2016, a hearing was held on the Final Report and Amended Final Report, at which the Trustee, Rosen, and the Unites States Trustee appeared.  On August 1, 2016, the UST filed a Statement in Connection with the Amended Final Report (the "UST's Statement"), in which the UST agreed with the Debtor's chapter 11 counsel and eloquently argued that "[n]either the Bankruptcy Code nor the related case law support" the Trustee's proposed distribution in the Amended Final Report.  The UST argued that the Trustee may not bypass the priorities of § 726 in the manner proposed because § 726 is a comprehensive scheme of distribution, to which the Code provides limited exceptions, such as equitable subordination under § 726(b), and "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." UST's Statement at 3 (citing *Hillman v. Maretta*, 133 S.Ct. 1943, 1953 (2013).  The UST further argued that *SPM* is inapplicable to this case because

*SPM* did not concern property of the estate being distributed by a trustee.  Additionally, the UST, citing *In re Goffena*, 175 B.R. 386 (Bankr. D. Mont. 1994), argued that because the Carve-out is property of the estate, the Trustee must follow the distribution scheme set forth in § 726.  Further, the UST, while noting that the Second Circuit has not directly decided this issue, cited to two recent Second Circuit decisions in chapter 11 cases where the courts indicated reluctance to adopt *SPM*'s holding and "a preference for adherence to the statutorily mandated distribution scheme with respect to the distribution of estate property." *See In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007); *Dish Network*.

## DISCUSSION

### Carve-outs are Property of the Estate Subject to 11 U.S.C. § 726

The Bankruptcy Code expressly provides that "property of the estate shall be distributed" according to the priorities set forth in § 726.  11 U.S.C. § 726(a).[3]  "As a general rule of statutory construction, where the terms of a statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990).  Section 726 incorporates the priorities set forth in § 507, and provides that such claims are given priority of distribution over unsecured claims. 11 U.S.C. § 726(a)(1).  The right of a class of claimants to receive a distribution flows down, as outlined in each subsection of priorities, with no subordinate class receiving anything unless the

---

[3] 11 USC § 726.  Distribution of property of the estate.
   (a)  Except as provided in section 510 of this title, property of the estate shall be distributed –
      (1)  First, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of -
          (A)  The date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or
          (B)  The date on which the trustee commences final distribution under this section;
      (2)  second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3) or (4) of this section . . . .
11 U.S.C. § 726(a).

preceding class has been paid in full and "[w]hen there is a class of claims that an estate cannot pay in full, § 726(b) directs the court to divide the assets *pro rata* among all claims in the class that cannot be fully satisfied." *In re Jonick Deli Corp.*, 263 B.R. 196 (S.D.N.Y. 2001) ("*Jonick*"). Section 507 provides, as relevant in this case, that § 503 administrative claims and "fees and charges assessed against the estate under chapter 123 of title 28" are afforded first priority. 11 U.S.C. § 507(a)(2). However, in a case that has been converted from chapter 11 to chapter 7, the chapter 11 administrative claims are subordinate to the post-conversion chapter 7 administrative claims. 11 U.S.C. § 726(b). Any unpaid UST quarterly fees, which are assessed under chapter 123 of title 28, are not subordinated despite being incurred pre-conversion, and are treated *pari passu* with the chapter 7 administrative fees. *Jonick*, 263 B.R. at 200. As relevant in this case, following chapter 11 administrative fees in priority are the priority unsecured claims of governmental units for certain tax debt. *See* 11 U.S.C. § 507(a)(8). Finally, the general unsecured claims are afforded the lowest priority. *See* 11 U.S.C. § 726(a)(2). To the extent that there is property of the estate available for distribution to a class of claimants, those claimants have rights as defined by the statutes. These rights may not be altered or eliminated in ways other than as provided for by statute or as consented to by the parties. The Court adopts the UST's argument that since the Code provides express exceptions and modifications to the distribution scheme of § 726, other exceptions may not be inferred "in the absence of contrary legislative intent." *Hillman v. Maretta*, 133 S.Ct. 1943, 1953 (2013).

A carve-out to the estate from secured collateral administered by a chapter 7 trustee, voluntarily given by a secured creditor whose collateral has been administered by the estate, is similar to a § 506(c) surcharge in certain respects. *See generally In re Gardi*, 273 B.R. 4, 11 (Bankr. E.D.N.Y. 2002); *In re Nuclear Imaging Systems, Inc.*, 270 B.R. 365 (Bankr. E.D.Pa.)

(analogizing a carve-out by a secured creditor to a voluntary § 506(c) surcharge, but finding that where a secured creditor agreed to carve-out funds to a chapter 11 debtor's counsel, pre-conversion, the carve-out was not subject to the priority of distribution set forth in § 726). A recovery by a chapter 7 trustee under § 506 is not paid directly to the administrative claimant, but instead is property of the estate, as it is property acquired post-petition pursuant to § 541(a)(7), which is, therefore, subject to the distribution scheme under §726. *See In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 484 (4th Cir. 1994) ("When a trustee recovers post-petition costs and expenses from a secured creditor pursuant to § 506(c), the recovered funds become available as an unencumbered asset for distribution to the unsecured creditors.") (citing 11 U.S.C. §§ 541(a)(7) & 726(a)). The Court finds that § 541(a)(7) applies to carve-outs such as the one in this case, and a chapter 7 trustee must distribute the funds received from such a carve-out pursuant to the priorities detailed in § 726.

As argued by the UST, *SPM*, cited by the Trustee, is inapposite here and, therefore, this Court neither accepts nor rejects the holding of *SPM*. In *SPM*, the First Circuit held that where an undersecured creditor and unsecured creditor's committee, pre-conversion, agreed to share whatever distributions the two parties received from the estate, pursuant to a percentage based formula, the unsecured creditors could receive the funds even though priority creditors were not receiving full distributions. *SPM*, 984 F.2d 1305. The First Circuit reached this conclusion primarily on the basis that the parties' "[a]greement is to take effect only after a proper distribution under the Code[,]" therefore, it "does not distribute property of the estate 'at the expense of' priority creditors nor does it violate the distribution scheme of section 726 or the priorities of section 507." *Id.* at 1312-1313. Here, however, because the Stipulation was entered into post-

conversion and the Trustee was the recipient of the Carve-out, it became property of the estate, immediately subject to the distribution scheme set forth in § 726.[4]

In this case the proceeds of the Carve-out came into the estate as unencumbered property. The Chapter 11 Administrative Creditors object to the Trustee's proposed distribution as set forth in the Amended Final Report because they are to receive nothing in favor of a distribution to the unsecured creditors of the Debtor. The Trustee argues that in addition to the cases cited in its brief, the Stipulation and Order entered in this case mandates that the unsecured creditors receive a distribution ahead of the Chapter 11 Administrative Claims and priority unsecured creditors. However, the Trustee cannot rely on the Stipulation and Order to alter the rights of the Chapter 11 Administration Creditors, who had no notice of its terms prior to its entry on the Court's docket. In addition, the language in the Stipulation and Order is ambiguous at best: while the "stipulated" portion of the Stipulation and Order provided that the carve-out was to pay chapter 7 administrative claims and general unsecured claims, the "agreed and so ordered" section merely provided that the carve-out was payable to the estate.  For these reasons, the Amended Final Report shall not be approved.   The Trustee is directed to submit an amended final report consistent with this Memorandum Decision.

## Compensation of a Chapter 7 Trustee and Retained Professionals

A "court may award to a trustee… reasonable compensation for actual, necessary services rendered by the trustee" and "reimbursement for actual, necessary expenses."   11 U.S.C. § 330(a)(1)(A) and (B).  "In determining the amount of reasonable compensation to be awarded to

---

[4] Similarly, *Dish Network* provides no support for the Trustee's position. *Dish Network* held that § 1129(b) precludes class skipping in the context of chapter 11 plan confirmation, but is silent as to whether class skipping is available in chapter 7. *See Dish Network*, 634 F.3d at 98

a trustee, the court shall treat such compensation as a commission, based on section 326." 11 U.S.C. § 330(a)(7). Similarly, retained professionals may be awarded "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A). Unlike a trustee, retained professionals are not entitled to a commission under § 326, but instead are subject to a determination that the time spent and rates charged were reasonable. *See* 11 U.S.C. § 330(a)(3). A service is necessary if it provides a benefit to the estate. *In re Acme Cake Co., Inc.*, 495 B.R. 212, 218 (Bankr. E.D.N.Y. 2010) (citing *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009)). "The test considers whether services provided were 'reasonably likely to benefit the estate.' The test is objective, considering the services that a reasonable [officer] would have performed in the same circumstances." *In re Kohl*, 421 B.R. at 125 (citing *In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2d Cir. 1996)); *see also* 11 U.S.C. § 330(a)(4)(A)(ii)(I) ("the court shall not allow compensation for… services that were not… reasonably likely to benefit the debtor's estate.").

In this case, the estate was comprised of funds from the Carve-out and cash on hand at the time of conversion. The Trustee's actions clearly resulted in a benefit to the estate by generating sufficient funds to make a distribution to creditors beyond the Trustee and his professionals. This case was not administered solely for the benefit of the Trustee and the Retained Professionals. The fees requested are reasonable and comport with applicable law. Accordingly, the Court will approve the fees and expenses of the Trustee, Rosen, and the Accountant.

## CONCLUSION

For the foregoing reasons, the request to approve the Amended Final Report is denied, and the Final Applications are approved in full.  The Trustee shall resubmit a final report of distribution consistent with the directives contained in this Memorandum Decision.

**Dated: Central Islip, New York**
**August 2, 2016**

**Robert E. Grossman**
**United States Bankruptcy Judge**